# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 00-1857

———————

Charles Nachman Kiefer,　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Appellant,　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of Minnesota.
Kenneth S. Apfel, Commissioner　　*
of Social Security,　　　　　　　*　(UNPUBLISHED)
　　　　　　　　　　　　　　　　　*
　　　　　　Appellee.　　　　　　*

———————

Submitted: September 12, 2000
Filed: September 15, 2000

———————

Before RICHARD S. ARNOLD, HANSEN, and BYE, Circuit Judges.

———————

PER CURIAM.

Charles Nachman Kiefer appeals from the judgment of the district court[1] upholding the Commissioner's decision to order repayment of social security benefits he received while imprisoned on a felony charge. For reversal, Kiefer contends that the administrative law judge (ALJ) erred in refusing to waive recovery of the overpayment.

———————

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, adopting the report and recommendations of the Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota.

In particular, Kiefer argues he was "without fault" in receiving the overpayment, within the meaning of 20 C.F.R. § 404.506 (2000) which prohibits recovery of an overpayment that "has been made to an individual who is without fault if adjustment or recovery would either defeat the purpose of title II of the Act, or be against equity and good conscience." Concluding that the ALJ's decision was supported by substantial evidence on the record as a whole, see Gladden v. Callahan, 139 F.3d 1219, 1222 (8th Cir. 1998), we affirm.

Initially, we note Kiefer indicated on his benefits application that the reporting requirements had been explained to him, yet he failed to inform the Social Security Administration (SSA) of his incarceration until the SSA confronted him with it. See Chapman v. Bowen, 810 F.2d 151, 152-53 (8th Cir. 1986) (per curiam) (where nothing in record indicated claimant was unable to read or understand reporting requirements, forms signed by him should have put him on notice about reporting responsibilities).

Kiefer argues, however, that a letter he received from one of the SSA's offices led him to believe that he was entitled to the payments he received while incarcerated. Specifically, in May 1996, while he was incarcerated, he received notice from the SSA's Southeastern Program Service Center (SPSC) that SSA was going to stop his retirement benefits due to his incarceration for a crime punishable by a sentence of more than one year. Kiefer responded, objecting because it would leave his spouse destitute, and requesting advice on his appeal rights. He also asked whether he would be entitled to benefits after his release to a halfway house and placement on home confinement. In June, he received another letter from SPSC, which thanked him for supplying his change of address, and stated that it would continue to send his check "to the financial institution which [he had] selected."

We conclude Kiefer could have been expected to know that the payments he received following the May notification were incorrect. The June letter on which he

allegedly relied merely stated that it would continue to send his check to his "selected" financial institution, it did not address the various concerns and queries raised in Kiefer's letter, and it directed him to call, write, or visit with any questions--an odd invitation to a person in prison. Moreover, in July he received a letter from SSA's Oshkosh, Wisconsin office requesting a copy of the May letter concerning "prisoner suspension." See 20 C.F.R. § 404.507 (2000) (individual will be considered to be at fault in receiving overpayment where incorrect payment resulted from, inter alia, his failure to furnish material information, or acceptance of payment which he knew or could have been expected to know was incorrect; individual is not exempt from liability for repayment simply because SSA was also at fault in making overpayment). Further, correspondence in the record reveals that Kiefer is both literate and articulate. See id. (in determining fault, pertinent circumstances such as individual's age and intelligence, and any physical, mental, educational, or linguistic limitations, are considered).

Finally, even assuming that Kiefer could be considered "without fault," substantial evidence supports the ALJ's determination that recovery would not defeat the purpose of the Act or be against equity and good conscience, in light of Kiefer's income and expenses, and the circumstances under which the overpayment occurred. See 20 C.F.R. §§ 404.508, 404.509 (2000).

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-3-