**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HELEN L. JONES,
<u>Plaintiff-Appellant,</u>

v.

No. 96-2666

SHIRLEY S. CHATER, COMMISSIONER OF
SOCIAL SECURITY,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-95-1415-A)

Submitted: June 17, 1997

Decided: August 25, 1997

Before WILKINS, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Lewis E. Gelobter, Emily J. Kaufmann, LEGAL SERVICES OF
NORTHERN VIRGINIA, INC., Leesburg, Virginia, for Appellant.
James W. Winn, Chief Counsel, Region III, Nora R. Koch, Assistant
Regional Counsel, Office of General Counsel, SOCIAL SECURITY
ADMINISTRATION, Philadelphia, Pennsylvania; Helen F. Fahey,
United States Attorney, Rachel C. Ballow, Assistant United States
Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Helen Jones appeals from an order of the district court adopting the magistrate judge's recommendation to uphold the Commissioner's determination that she was not without fault in causing an overpayment of insurance benefits to her, and therefore may not receive a waiver of recovery of the overpayment. Jones applied for widow's insurance benefits in May 1990. A representative of the Social Security Administration ("SSA") recorded on her application the information provided by Jones, including the fact that she would receive a pension upon her retirement from the federal government. The SSA employee informed her that with the offset for the pension, her widow's benefits would be only $18.00 per month.

Jones signed the application, which stated that she would be obligated to inform SSA when she began receiving the pension, but later the same day filed another form withdrawing her application "because of the government pension offset and the receipt of a government pension." Although Jones testified that she does not recall filing the withdrawal request, she called SSA in August 1990 to inquire about applying for benefits. Due to a clerical error, Jones's withdrawal form was never processed, and SSA notified her on August 20, 1990, that her application for widow's benefits had been approved, and that her monthly benefit, payable when she ceased working, would be $484.90.

Jones retired in December 1990, and began receiving a government pension of $723 a month and widow's benefits of $511 per month. She did not inquire about the discrepancy between the $18 figure she had been told she would receive and the $511 she actually received. SSA eventually discovered that it never processed Jones's withdrawal application and contacted her about it. She called SSA in April 1992, and informed them that she did not withdraw her claim, and that her

2

widow's benefits were her only source of income. When SSA contacted her again in August 1992, however, she admitted that she was also receiving a government pension. That same month, SSA notified Jones that her benefits would be reduced, and that she had been overpaid by $9909 from December 1990 to August 1992. The parties agreed to a payment rate of $10 per month.

Jones filed a request for waiver of recovery of the overpayment in December 1992. The ALJ determined that Jones was not without fault in causing the overpayment and, accordingly, denied the request for waiver. The Appeals Council denied review, and the district court adopted the magistrate judge's recommendation to affirm the decision of the Commissioner.

The Commissioner's decision must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g) (1994); Richardson v. Perales, 402 U.S. 389, 401 (1971). The Commissioner's findings of fact, however, are not binding if they were based upon the application of an improper legal standard. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

Waiver of recovery of an overpayment is appropriate under the Social Security Act ("Act") where the individual receiving the overpayment is: (1) without fault in causing the overpayment, and (2) recovery would either defeat the purpose of title II of the Act or be against equity and good conscience. 42 U.S.C. § 404(b) (1994). If the Commissioner properly determines that a claimant is not without fault, the inquiry ends. See Garnett v. Sullivan , 905 F.2d 778, 782 (4th Cir. 1990). The claimant bears the burden of proving that she was without fault in causing the overpayment. See Bray v. Bowen, 854 F.2d 685, 687 (5th Cir. 1988).

Under the applicable regulations, in all overpayment cases except "deduction" overpayment cases, whether the claimant is at fault depends on whether the overpayment was due to: (1) an incorrect statement by the claimant which she knew or should have known to be incorrect; (2) the claimant's failure to furnish information which she knew or should have known to be material; or (3) the claimant's acceptance of a payment which she either knew or could have been expected to know was incorrect. See 20 C.F.R. § 404.507(a)-(c)

3

(1996). For deduction overpayment cases, the ALJ is required to apply the criteria set forth at 20 C.F.R. §§ 404.510, 511 (1996), to determine fault. In this case, the ALJ applied section 404.507 and found that Jones was not without fault because she knew or could have been expected to know that the monthly checks she received were for an amount exceeding that to which she was entitled.

On appeal, Jones's primary contention is that the ALJ applied the wrong standard in determining fault. Jones contends that her overpayment was a deduction overpayment, because it resulted from SSA's failure to deduct the offset for her pension from her widow's benefits. She contends that this case must be remanded so that the ALJ can determine fault under the proper criteria. We disagree.

The regulations provide six categories of cases in which an insured's monthly insurance benefits must be reduced. See 20 C.F.R. § 404.401(a)-(f) (1996). Decreases for deductions are governed by subsection (b) of section 404.401. Subsection (b) enumerates seven different forms of deductions. Subsection (b) does not address decreases based on an offset for funds received from a government pension. Moreover, this silence is clearly not inadvertent, because such decreases are specifically addressed by 20 C.F.R. § 404.408a (1996). That section explicitly states that such decreases are "reductions," not deductions. Reductions are among the six categories listed by section 404.401. See §404.401(a). Thus, viewing the regulatory scheme as a whole, it is clear that the decrease to Jones's benefits was not a deduction overpayment.

Jones correctly points out that the regulations provide only two terms for overpayments; "deduction overpayments," and "entitlement overpayments." See 20 C.F.R. §§ 404.510a, 511 (1996). Notwithstanding the fact that decreases to insurance benefits due to pension offsets are specifically labeled "reductions" by section 404.408a, and that such decreases are not among the universe of deductions enumerated by section 404.401(b), Jones contends that her overpayment cannot be viewed as an entitlement overpayment because the decrease to her insurance benefits does not meet the regulatory definition of an entitlement overpayment, and therefore can only be a deduction overpayment. The applicable regulation, however, states, in pertinent part, that "a benefit payment exceeding the amount to which [s]he is enti-

4

tled, constitutes an entitlement overpayment." 20 C.F.R. § 404.510a. Because Jones clearly received an amount exceeding the amount to which she was entitled, she falls within the scope of this definition.

Jones also avers that the ALJ's finding of fault was erroneous even under section 404.507, because he failed to take into account her age, intelligence, and mental and educational limitations. Section 404.507 requires the ALJ to consider "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations . . . the individual has." Id. (emphasis added). The regulation does not require the ALJ to make explicit findings regarding the listed criteria where there is no basis for considering such criteria to be pertinent. See Anderson v. Sullivan, 914 F.2d 1121, 1123 (9th Cir. 1990). In this case, there was no evidence or allegation that Jones suffered from any kind of physical or mental impairment. Moreover, the ALJ questioned her at the hearing regarding her education (tenth-grade) and work background (23 years service as clerical worker for federal government), and presumably gained some insight into her intelligence from this information and from her testimony at the hearing.

The only support Jones provides for her position that such factors were relevant is the ALJ's finding that Jones did not "understand" the social security system or why she was receiving more than the $18 she was originally told she would receive. But this lack of understanding was not even allegedly the result of any mental deficiency, but rather was due to the fact that SSA's actions were simply inconsistent. The ALJ, however, rationally concluded that these inconsistencies either actually aroused or could have been expected to arouse Jones's suspicion that her benefit payments were erroneous. Specifically, the ALJ reasonably found that since an SSA representative told Jones that she was only entitled to $18 a month, and she did not understand why she thereafter received monthly checks for nearly 27 times that amount, she either knew or could have been expected to know that the amounts she received was incorrect. This conclusion is further suggested by consideration of the fact that Jones did not inquire about the discrepancy and at one point concealed from an SSA employee the fact that she was receiving a government pension.

Accordingly, the order of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are

5

adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6